IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HOLLIS DEAN MARTZ                                                                                    PLAINTIFF

v.                                            Civil No. 4:18-cv-4047

MATTHEW D. WEBB, Sevier County Detention
Center ("SCDC"); MICHAEL BARNES, SCDC;
THOMAS JACKSON, SCDC; KRIS HUNDLEY,
SCDC; TROY CRAVENS, SCDC; CHAD DOWDLE,
SCDC; ROBERT GENTRY, SCDC; WENDELL
RANDALL, SCDC; CHRISTOPHER WOLLCOT, SCDC;
and SHERIFF BENNY SIMMONS                                                                       DEFENDANTS

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 24). Plaintiff Hollis Dean Martz filed a Response.[1] (ECF No. 30). Defendants filed a Reply. (ECF No. 33). The Court finds this matter ripe for consideration.

**I. BACKGROUND**

This is a civil rights action filed *pro se* by Plaintiff under 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") – Randall L. Williams Correctional Facility in Pine Bluff, Arkansas. Plaintiff's claims arise from alleged constitutional violations that occurred while he was a pretrial detainee in the Sevier County Detention Center ("SCDC").

At approximately 9:00 p.m. on April 27, 2016, Sevier County deputies were dispatched to the home of Plaintiff's brother and sister in law in response to reports that Plaintiff was disorderly,

---

[1] In his Response, Plaintiff alleges that he was held in overcrowded living conditions. This allegation was not made in his Amended Complaint (ECF No. 7) and, thus, it is not properly before the Court.

intoxicated, and that he shot a gun. (ECF No. 26-2, p. 5). Defendants Barnes, Jackson, Webb, Dowdle, Gentry, and Simmons responded, but did not locate Plaintiff on the property.[2] Two hours later, Plaintiff's mother contacted the sheriff's office and informed officers that he was at her home. Defendants Barnes, Webb, Hundley, and Jackson arrived and found Plaintiff on his mother's front porch.

The deputies then arrested Plaintiff, utilizing force to do so. However, the parties offer differing accounts of how the arrest occurred. Plaintiff alleges that he complied with the officers' orders, had his hands in plain view, and did not "fight" them when they arrested him. He claims that, despite his compliance, the officers slammed him to the ground, thereby injuring his face, neck, hands, spine, and ankle. (ECF No. 7, pp. 6-9). Defendant Webb submitted an affidavit stating that Plaintiff was ordered to get on the ground several times but did not comply, and when they attempted to place handcuffs on him, he pulled one of his hands back, causing Defendant Webb to fall to the ground. Defendants state that, under those circumstances, they used reasonable force to secure Plaintiff.[3] (ECF No. 26-6).

On April 28, 2016, Plaintiff was booked into the SCDC for Criminal Mischief 1st Degree, Possession of Firearms by Certain Persons, Aggravated Assault with Deadly Weapon, and Terroristic Threatening. (ECF No. 26-2, pp. 2-3). That same day, Plaintiff was taken to the Emergency Room at the De Queen Medical Center to evaluate his claims of right ankle pain and

---

[2] Sevier County Deputies Greg Davignon and Johnny Cooke also responded to the call. They are not parties to this lawsuit.

[3] Video of the incident does not show any of the officers initially approaching Plaintiff, nor does it reveal whether Plaintiff refused to comply with the officers' orders. The video shows several officers on the ground, struggling with Plaintiff as he screams expletives and complains that his ankle is broken and that the officers are hurting him. The video also shows two officers escorting Plaintiff to the patrol car as he is visibly limping, favoring his right ankle. After Plaintiff is placed in the car, he complains that the handcuffs are too tight and that he could not "feel anything." (ECF No. 26-7).

neck injury.[4] Emergency room medical staff noted that Plaintiff "is unaware of how his ankle was injured but [states] that he was body slammed." (ECF No. 26-8, p. 24). It was also noted that he complained of pain and there was mild swelling and bruising on his outer ankle. An x-ray showed no evidence of a fracture or dislocation of his ankle. *Id.* at p. 27.

On May 6, 2016, Defendant Randall pepper sprayed SCDC inmate Jason Short, who is not a party to this case, for failure to obey orders.[5] (ECF No. 26-4, p. 13). Plaintiff claims that he was in the cell with Short at the time and was hit with some of the pepper spray, causing pain and irritation to his eyes, ears, mouth, and throat. Plaintiff also claims that the spray caused him to vomit and made it difficult to breathe. (ECF No. 7, pp. 6-9). Defendants state Plaintiff may have been housed with Short on May 6, 2016, but that Plaintiff was never directly sprayed with pepper spray. (ECF No. 26, p. 2).

Plaintiff alleges that he then told Defendants Randall, Gentry, and Dowdle that he had been hit with pepper spray and asked for permission to shower, change his clothes, and receive medical attention. His requests were allegedly ignored because he "had access to a sink, towel, and soap all in the cell with him." (ECF No. 33-1). At some point, Plaintiff also submitted the same request to Defendants Cravens, Wolcott, and Simmons, but they also allegedly took no action, and Plaintiff had to wait until the following day to shower. Plaintiff filed multiple grievances in May 2016, grieving that he was sprayed with pepper spray on May 6, 2016, had difficulty breathing, and was refused clean-up and medical attention. (ECF No. 26-3, pp. 4, 8, 12, 20).

SCDC policy instructs its officers that detainees have certain rights, including the entitlement to necessary and timely medical care. SCDC detainees are permitted to submit medical

---

[4] It is not clear from the record whether Plaintiff was taken to the hospital before or after he was booked into the SCDC.

[5] Defendants Gentry and Dowdle were also present during this incident.

3

complaints daily for review by qualified medical personnel (ECF No. 36, p. 3) and all jailers are required to fill out and/or submit any and all inmate medical reports. (ECF No. 26-5, p. 1). SCDC policy also provides that all detainees should be provided access to necessary health care through routine sick call procedures and that no county employee or official may interfere with a detainee's access to sick call. *Id.* at p. 5.

On April 5, 2018, Plaintiff filed suit against the following Defendants: Deputy Matthew D. Webb, Deputy Michael Barnes, Deputy Thomas Jackson, Deputy Kris Hundley, Deputy Troy Cravens, Deputy Chad Dowdle, Investigator Robert Gentry, Deputy Wendell Randall, and Deputy Christopher Wollcot. (ECF No. 1). Plaintiff also named several ADC officers as defendants for alleged constitutional violations that occurred at the North Central Unit of the ADC, located in Calico Rock, Arkansas, which is within the Eastern District of Arkansas, Northern Division. On April 5, 2018, the Court granted Plaintiff's motion to proceed *in forma pauperis* and transferred his claims against the ADC defendants to the Eastern District of Arkansas for adjudication. (ECF No. 3).

On April 9, 2018, the Court ordered Plaintiff to file an Amended Complaint to clarify his claims against each of the Sevier County Defendants. (ECF No. 6). On April 18, 2018, Plaintiff filed an Amended Complaint. (ECF No. 7). Plaintiff alleges that Defendants Webb, Barnes, Jackson, and Hundley used excessive force against him when he was arrested on April 28, 2016, and that they subsequently denied him medical care.[6] Plaintiff also alleges that on May 6, 2016, Defendants Randall, Gentry, Cravens, Dowdle, Wolcott, and Simmons used excessive force against him when he was hit with pepper spray, and that they denied him medical care. Plaintiff sues Defendants in both their official and individual capacities. He seeks compensatory and

---

[6] Although Plaintiff states he was arrested on April 28, 2016, the record indicates that he was arrested around 11:00 p.m. on April 27, 2016.

4

punitive damages, asks that his "criminal 67-CR-16-53-2" be removed and *nolle prossed*, and further requests appropriate medical care. *Id.* at p. 16.

On January 25, 2019, Defendants filed the instant Motion for Summary Judgment, arguing: (1) there is no proof of any personal involvement by Defendants; (2) Plaintiff was not subjected to excessive force; (3) Defendants were not deliberately indifferent to Plaintiff's medical needs; (4) Defendants are entitled to qualified immunity; and (5) there is no basis for official capacity liability.[7] (ECF Nos. 24, 25).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d

---

[7] Defendants also argue in their Motion for Summary Judgment that Plaintiff's constitutional rights were not violated by his first appearance hearing. (ECF No. 24). However, Plaintiff's Amended Complaint does not assert a claim based on a first appearance hearing and, consequently, the Court will not consider that argument in this memorandum opinion.

5

621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

As noted above, Defendants argue they are entitled to qualified immunity. When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997). Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). First, the Court must determine whether the facts demonstrate a deprivation of a constitutional right. *Id.* (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). If so, the Court must decide whether the implicated right was clearly established at the time of the deprivation. *Id.*

To determine if Plaintiff's right was clearly established at the time of the alleged deprivation, the Court "must . . . examine the information possessed by the governmental official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law." *Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, the Court must ask whether the

law at the time of the events in question gave the officers "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Because the issue of qualified immunity turns in part on whether the facts indicate that a constitutional deprivation has occurred, the Court will address Defendants' qualified immunity claims in the discussions of each alleged constitutional violation.

### A. Excessive Force During Arrest

Plaintiff claims Defendants Webb, Barnes, Jackson, and Hundley used excessive force against him when they arrested him on April 27, 2016.

When an excessive force claim arises in the context of an arrest, it is most properly characterized as one invoking the protections of the Fourth Amendment. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). In evaluating an excessive force claim under the Fourth Amendment, a court must consider whether the force was objectively reasonable under the circumstances, "rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). The application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Plaintiff alleges that he complied with Defendants Webb, Barnes, Jackson, and Hundley's orders and did not resist when they approached him. Despite that, he claims that they threw him to the ground, injuring his shoulders, neck, face, back, knee, and right ankle. He also states his hands were injured because the handcuffs were too tight. Defendants Webb, Barnes, Jackson, and

Hundley claim that Plaintiff refused to comply with their orders to get on the ground and when they attempted to grab his hands to place handcuffs on him, Plaintiff pulled back, causing Defendant Webb to fall to the ground. Defendants argue the force they used under the circumstances was reasonable.

Video of the arrest does not show what transpired when the officers first approached Plaintiff. Instead, the body camera footage shows one of officers running towards Plaintiff after he is already on the ground, with several officers on top of him. One officer can be heard yelling, "get on the ground," and Plaintiff is heard yelling at the Defendants that they are hurting him and to get off his ankle because he thought it was "broke[n]." Accordingly, the Court concludes there is a question of material fact as to whether the alleged use of force during Plaintiff's arrest by Defendants Webb, Barnes, Jackson, and Hundley was objectively reasonable.

Turning to the issue of qualified immunity, the facts when viewed in a light most favorable to Plaintiff sufficiently demonstrate a deprivation of his right to be free from excessive force during his arrest. In addition, there is no question that in April 2016, the law clearly established that an arrestee had a right to be free from the use of excessive force. *See Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002). Therefore, Defendants Webb, Barnes, Jackson, and Hundley are not entitled to qualified immunity and summary judgment is denied regarding Plaintiff's claim that he was subjected to excessive force during his arrest.

**B. Denial of Medical Care After Arrest**

Plaintiff claims that Defendants denied him "timely" medical care in violation of his constitutional rights after he was arrested on April 27, 2016. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). The deliberate indifference

standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). In the video of the arrest, Plaintiff is seen limping and he can be heard screaming and groaning in pain. For purposes of this opinion, the Court must give Plaintiff the benefit of all reasonable inferences and, thus, the Court presumes that Plaintiff's injuries were obvious to Defendants. Therefore, at the time of the arrest, Plaintiff suffered from objectively serious medical needs.

Even though Plaintiff's injuries may have been sufficiently serious, there is no summary judgment evidence that Defendants Webb, Barnes, Jackson, or Hundley were deliberately indifferent to his medical needs after he was arrested. Plaintiff was taken to the hospital to be evaluated within hours of his arrest. He was evaluated and released to the custody of the SCDC with a swollen ankle and minor bruising. Accordingly, Defendants are entitled to summary judgment regarding Plaintiff's claim he was denied medical care after his arrest on April 27, 2016.[8]

### C. Excessive Force Claims - May 6, 2016 Pepper Spray Incident

Plaintiff alleges he was subjected to excessive force on May 6, 2016 when Defendant Randall attempted to pepper spray another inmate and hit Plaintiff with the spray. Plaintiff also alleges Defendants Gentry, Cravens, Dowdle, Wolcott, and Simmons were "involved" in the

---

[8] Because the Court finds there was no violation of Plaintiff's constitutional rights, it is not necessary to address the issue of qualified immunity regarding Plaintiff's claim he was denied medical care after his arrest on April 27, 2016.

deployment of the pepper spray because they were made aware of it. In addition, Plaintiff alleges Defendants used excessive force against him when they refused to allow him to shower, change his clothes, or receive medical attention after he was hit with pepper spray.

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[O]rdinary errors of judgment" do not rise to the level of an Eighth Amendment violation. *Id.* at 322. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This is a different and less protective test than the Fourth Amendment standard that applies to "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." *Graham*, 490 U.S. at 388.

### 1. Deployment of Pepper Spray

Plaintiff concedes that Defendant Randall deployed pepper spray on May 6, 2016, toward another inmate who was causing a disturbance in the same cell where Plaintiff was housed. Thus, Defendant Randall's deployment of the pepper spray, based on the summary judgment record, was reasonable and in furtherance of the legitimate need to maintain security within the SCDC. Consequently, Plaintiff has failed to establish that Defendant Randall exhibited any "malicious or sadistic" conduct when the pepper spray was deployed. *See Thomas v. Byrd*, Civ. No. 08-03840, 2009 WL 4546666, *8 (E.D. Ark. 2009) (dismissing with prejudice an excessive force claim where a prison official did not intend to pepper spray the plaintiff but instead was protecting himself against another inmate).

It necessarily follows that the other Defendants, who were not personally involved in the deployment of the pepper spray, did not engage in any force against Plaintiff. Accordingly, Defendants Randall, Gentry, Cravens, Dowdle, Wolcott, and Simmons are entitled to summary judgment regarding Plaintiff's claim of excessive force based on the deployment of pepper spray.[9]

### 2. Denial of Ability to Clean Up after Pepper Spray

Plaintiff alleges Defendants Randall, Gentry, Cravens, Dowdle, Wolcott, and Simmons used excessive force against him when they ignored or refused to allow him to shower, change his clothes, and receive medical care after he was hit with pepper spray on May 6, 2016. Although Plaintiff's claim may be better described as one for denial of medical care, courts have nonetheless found excessive force when inmates were prevented from showering and cleaning up after being pepper sprayed.

In a decision from the Eastern District of Arkansas, the court dismissed an excessive force claim by an inmate who was not the intended target of pepper spray when he was permitted to shower off any residual pepper spray when he asked to do so. *See Thomas*, 2009 WL 4546666, *9. On the other hand, the Eighth Circuit has affirmed the denial of summary judgment on claims of excessive force based on refusal to allow a victim—who was the intended target—to wash off the chemical involved in the use of pepper spray when the officers failed to provide the victim any warning that the force would be used and there was no apparent purpose other than inflicting pain. *See Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002); *Lawrence v. Bowersox*, 297 F.3d 727, 730, 732 (8th Cir. 2002).

In a 2009 decision from the Eastern District of Missouri, the incarcerated plaintiff, Campbell, was sprayed with pepper spray after he was warned that spray would be used if he

---

[9] Because the Court finds there was no constitutional violation, the issue of qualified immunity will not be addressed as to this claim.

refused to submit to a strip search. *See Campbell v. Wilhite,* Civ. No. 07-0018, 2009 WL 277634 (E.D. Mo. 2009). After the spray was deployed and the strip search was conducted, Campbell returned to his cell and was not allowed to shower for three days. A video tape showed that Campbell began to use the water in his sink to wash his eyes and face. Campbell continued to wash his face for about ten minutes until the nurse arrived. The nurse ordered Campbell to dry himself and then examined him for approximately one minute. When she finished, she told him to continue washing himself in the sink. She did not provide him with any treatment. In denying the defendants' motion for summary judgment, the *Campbell* court stated it was:

> extremely troubling that Defendants did not allow Plaintiff to shower after the incident. . . . By refusing to allow Plaintiff to shower, Defendants effectively continued the use of force against Plaintiff long after he complied with their orders and was placed back in his cell. Defendants emphasis [sic] that Plaintiff had access to a sink with soap and water in his cell. However, on the basis of the record before the Court, it is not apparent that placing Plaintiff in a confined space with a small sink allowed him to adequately clean the pepper spray off of his body. Under these circumstances, a question of material fact exists as to whether Defendants' actions were punitive, arbitrary or malicious.

*Id.* at *5. Like in *Campbell*, the summary judgment record in this case presents questions of fact as to whether ignoring Plaintiff's requests to shower, clean up, change his clothes, and receive medical attention after he was hit with pepper spray on May 6, 2016 was punitive, arbitrary, or malicious.

As for Defendants' claim that they are entitled to qualified immunity, based on the cases previously cited in this section, the law was clearly established in May 2016 that refusing to allow an inmate to wash off pepper spray and seek medical care after being hit with the spray may constitute a violation of Plaintiff's civil rights. Therefore, Defendants are not entitled to qualified immunity and summary judgment is denied as to Plaintiff's claim of excessive force based on the alleged failure to allow him to clean up and seek medical care after being hit by pepper spray.

### D. Denial of Medical Care after Pepper Spray Incident

Plaintiff claims Defendants Randall, Gentry, Cravens, Dowdle, Wolcott, and Simmons denied him adequate medical care after he was hit with pepper spray by Defendant Randall on May 6, 2016. As previously stated, the Eighth Amendment prohibits the deliberate indifference to the serious medical needs of an inmate. "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Pietrafeso v. Lawrence*, 452 F.3d 978, 983 (8th Cir. 2006).

Plaintiff alleges he told each of the named Defendants that he needed to clean up, change clothes, take a shower, and be evaluated by medical personnel after he was hit with pepper spray. He claims the pepper spray hit him in the face causing his eyes, ears, and mouth to burn. He also states the spray caused him to vomit and have trouble breathing. Defendants have not specifically put at issue whether Plaintiff's condition after he was hit with pepper spray was a serious medical condition and therefore, for purposes of this opinion, the Court will assume Plaintiff's injuries were sufficiently serious.

Defendants argue they were not deliberately indifferent to Plaintiff's medical needs because he had access to a sink, soap, and a towel in his cell. The Court is not persuaded by this argument. Plaintiff was forced to endure the effects of the pepper spray until the following day, when all inmates were permitted to shower. Accordingly, the Court finds there are issues of material fact as to whether Defendants deliberately disregarded Plaintiff's serious medical needs.

The Court will now turn to the issue of whether Defendants are entitled to qualified immunity. It is well established that it is unconstitutional for prison officials to act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Eighth Circuit has also recognized that a reasonable officer would know that it is unlawful

to delay medical treatment for a detainee exhibiting obvious signs of medical distress. *Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006).

Given this precedent, the Court finds that a reasonable officer familiar with Plaintiff's requests for medical assistance—as each of these Defendants were—would have known that a constitutional deprivation may occur if they failed to provide medical care to Plaintiff after he was hit with pepper spray. Therefore, the Court finds that Plaintiff's right to adequate medical care was clearly established and, thus, Defendants Randall, Gentry, Cravens, Dowdle, Wolcott, and Simmons are not entitled to qualified immunity on this claim. Accordingly, summary judgment is denied as to Plaintiff's claim that he was denied medical care after he was pepper sprayed on May 6, 2016.

### E. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Under 42 U.S.C. § 1983, a defendant may be sued in either his individual capacity, in his official capacity, or both. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Sevier County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Sevier County under section 1983, Plaintiff "must show that a constitutional violation was

committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Plaintiff has not alleged that any policy, practice, or custom of Sevier County contributed to the alleged violation of his constitutional rights. Accordingly, Plaintiff's official capacity claims against all Defendants fail as a matter of law. *Id.*

### IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 24) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's official capacity claims against all Defendants; his individual capacity claims against Defendants Webb, Barnes, Jackson, and Hundley for deliberate indifference related to his arrest on April 27, 2016; and his individual capacity claims against Defendants Randall, Gentry, Cravens, Dowdle, Wolcott, and Simmons for excessive force related to the deployment of pepper spray on May 6, 2016, are hereby **DISMISSED WITH PREJUDICE**. Plaintiff's claims against Defendants Webb, Barnes, Jackson, and Hundley for alleged excessive force during his arrest on April 27, 2016, and his claims against Defendants Randall, Gentry, Cravens, Dowdle, Wolcott, and Simmons for alleged excessive force and deliberate indifference arising from being pepper sprayed on May 6, 2016, remain for further adjudication.

**IT IS SO ORDERED**, this 30th day of April, 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge